PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MATTHEW CHANG (CABN 348765)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5037
    Matthew.Chang2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 25-70539-MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| EDY ANTONIO JR., | Date:  May 22, 2025<br>Time:  1:00 p.m.<br>Court: Hon. Nathanael Cousins |
| Defendant. | |

    The Defendant—Edy Antonio Jr.—is alleged to have violated Title 18, United States Code, Section 2422(b), attempted coercion and enticement of a minor to engage in criminal sexual conduct. A detention hearing is scheduled for May 22, 2025. The United States files this memorandum in support of its motion for the detention of Defendant pending trial.

**I.    FACTUAL BACKGROUND**

    On April 21, 2025, an undercover agent from Homeland Security Investigations posted an advertisement on "SkiptheGames," a website dedicated to promoting commercial sex services. That same day, when Defendant responded to the advertisement via text message, the undercover agent informed him that the females featured in the advertisement were 12- and 14-years-old. Despite knowing the advertised individuals were under 18 years of age, Defendant—a 30-year-old man—continued to engage with who he believed to be the procurer of the 12- and 14-year-old girls. Ultimately, Defendant arranged

to pay $500 to have unprotected sex with who he believed were two young girls. Thereafter, Defendant took numerous substantial steps towards committing the crime, including traveling to the planned meeting location in Salinas, California, and conducting surveillance detection techniques to check for the presence of law enforcement.

## II. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A defendant's danger to the community must be supported by clear and convincing evidence, but a defendant's flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that the defendant's release would pose. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 742-43 (1987).

The government has the right to a detention hearing because this case involves a minor victim. *See* 18 U.S.C. § 3142(f)(1)(E). There is a rebuttable presumption in favor of detention for an offense involving a minor victim under 18 U.S.C. § 2422(b). *See* 18 U.S.C. § 3142(e)(3)(E). Under this scheme,

the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

### III.   ARGUMENT

**1. There is clear and convincing evidence that the defendant poses a danger to the safety of any other person and the community.**

Pretrial detention is warranted if the Court finds by "clear and convincing evidence" that the defendant poses a danger to specific individuals or the community at large. 18 U.S.C. § 3142(f); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

    *i.*    *Nature and circumstances of the alleged offense*

The type of offense charged here—those involving a minor victim—was specifically contemplated by Congress as being a factor worthy of consideration. *See* 18 U.S.C. § 3142(g)(1). Here, the defendant is alleged to have violated Title 18, United States Code, Section 2422(b) when he responded to a commercial sex advertisement and ultimately agreed to pay $500 to have unprotected sex with two purported minor girls, ages 12 and 14. The defendant is 30 years old—older than both girls combined. Thereafter, the defendant took numerous substantial steps towards committing the crime, including by traveling to the planned meeting location and carrying precisely $500 in cash. The only thing that stopped the defendant from sexually assaulting two minor girls was the fact that the girls were fictional. *United States v. Petersen*, 2017 U.S. Dist. LEXIS 75441, *9 (N.D. Cal. May 17, 2017) (considering detention on a child pornography charge before noting the sexual exploitation of children is among "one of the gravest and most serious crimes that a defendant can be charged with.").

Throughout his communications with who he believed to be the procurer of the 12- and 14-year-old girls, Defendant repeatedly asked for reassurances that the undercover agent was not part of law enforcement, including a demand for photo or video verification of the girls. Moreover, when Defendant arrived at the arranged meeting location, he can be observed on video conducting countersurveillance by driving around the perimeter of the Hampton Inn building to look for law enforcement before parking his

vehicle. Following his *Miranda* advisement, Defendant commented to law enforcement a statement to the effect of: "You guys were sneaky, I didn't see no heads pop up. I guess everyone was hiding in the back." The Defendant then followed up by asking: "Was that semitruck in the back part of it?" In totality, these evasive techniques indicate not only that Mr. Antonio was of a guilty mind, but they also support his own awareness of the severity of the conduct.

Moreover, following his *Miranda* advisement, Defendant also admitted that he had previously paid adults for sex, including other individuals on Skipthegames.EU. When law enforcement asked whether they would find anything on his phone related to minor children, Mr. Antonio provided a response to the effect of: "I think previous meetups—I'm pretty sure—is 100% adults."

The seriousness of the charged offense is further demonstrated by its penalty. A preliminary calculation of Defendant's offense level under the United States Sentencing Guidelines shows a guideline range of 135-168 months' imprisonment. Moreover, 18 U.S.C. § 2422(b) is an offense that carries a maximum sentence of life and a mandatory minimum sentence of ten years in custody. These substantial custodial penalties are indicative of Congress' judgment about the seriousness of offenses involving the abuse of children, including "attempt" offenses.

### ii. *Weight of the evidence*

Although the Ninth Circuit considers the weight of the evidence to be the least important statutory factor, this Court is still required to consider it. *See Hir*, 517 F.3d at 1090 (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that defendant would pose a danger if released). Here, the weight of the evidence is compelling and substantial:

- The evidence includes text messages between Defendant and who he believed to be the procurer of the purported 12- and 14-year-old girls. Throughout the course of this exchange, Mr. Antonio discussed the specific sexual acts[1] he wanted to do to the 12- and 14-year-old girls, the price he was willing to pay for such sex services, and meeting location/time. Moreover, Mr. Antonio also provided a selfie-style photograph as verification that he was not part of law enforcement.

---

[1] Throughout the text messages, Defendant clarified he wanted "GFE no condom." Per Special Agent Mendelsohn's affidavit, "GFE" in the context of human trafficking investigations stands for "girlfriend experience," which is similar to be "full service" but is expected to be more intimate and include reciprocal pleasure. ECF 5 at 7, fn 6.

- The evidence includes drone footage of the meeting location. Specifically, the Defendant is observed entering the hotel parking lot; driving around the perimeter of the hotel; and parking at the Starbucks to the immediate left of the hotel. After Mr. Antonio received the hotel's room number, he is further observed driving toward the hotel entrance and parking his vehicle in the smaller hotel parking lot. At that point, Mr. Antonio was arrested.
- The evidence includes the Defendant's recorded interview admission.
- The evidence includes that law enforcement officers found precisely $500 on the Defendant's person, the exact amount Defendant agreed to pay to have unprotected sex with the purported 12- and 14-year-old girls.
- The evidence includes that the phone number the Defendant used to respond to the advertisement was registered to the Defendant at all times relevant to this prosecution.
- The evidence includes that following his arrest he made a recorded jail call to his partner. During the call, the Defendant claimed he was arrested trying to do a good deed. He claimed something to the effect of: "I got a phone number. Somebody messages me, like [inaudible], like, trying to sell me, like, like adolescent kids, right? So I was like, 'what the hell?' So I messaged them back in hoping to like, you know, see if I can get their address and I can call 911, but then when they gave me the address, I went there, and next thing you know, I got fucking arrested. And now they're charging me for pedophile and all that bullshit." This narrative was different than what the Defendant shared with law enforcement earlier that day.

### iii. History and characteristic of the defendant

The government acknowledges that the Defendant has no criminal history. However, during his interview with law enforcement, the Defendant admitted he previously paid for commercial sex services; and as for those prior occurrences, the Defendant was only "pretty sure" that he was paying for sex with adults rather than minors. Moreover, the defendant is familiar with various evasive techniques to avoid law enforcement detection. As described above, the Defendant repeatedly asked if the individual he believed to be the procurer of the 12- and 14-year-old girls was part of law enforcement; requested a photo of the girls as verification; and took proactive steps to drive around the entire perimeter of the arranged meeting location to look for police presence. Further, the Defendant utilized TextNow, a downloaded

1 phone application that generated a proxy phone number that the Defendant subsequently used to respond
2 to the advertisement and facilitate the meeting. During the interview, the Defendant also admitted to
3 deleting the TextNow application from his phone when approached by law enforcement.

### iv. Danger to any person or the community

The Defendant, by his own actions, has demonstrated he is a danger to minors in the community. In his text message communications, despite learning that the advertised girls were ages 12 and 14, Defendant continued to discuss sex services and prices. For instance, Defendant asked "How much is the gfe and no condom[?]" Shortly after, in the same text that the Defendant agreed to pay $500 for unprotected sex, he also wrote: "& how many times can i cum in the hr session[?]" In this case, there were fortunately no victims because the two minor girls were fictional. Nevertheless, there was a fast turnaround wherein ANTONIO responded to the advertisement at approximately 12:00 p.m., and further provided two texts at 1:41 and 1:44 p.m. stating "Im here." This fast turnaround time would make it difficult to prevent the defendant from posing a safety risk while supervising him. Finally, the government does not have evidence that the Defendant has abused his own child, and sincerely hopes that has not happened, but the fact that Defendant appeared so willing to engage the young girls raises serious concerns.

### 2. There is a preponderance of the evidence that the defendant is flight risk.

The government acknowledges that the Defendant has no criminal history; was not detained in the parallel state court proceeding; and that he indeed showed up to his last state court appearance. However, Mr. Antonio is alleged to have violated Title 18, United States Code, Section 2422(b), an offense that carries a maximum sentence of life and a mandatory minimum sentence of ten years in custody. There is a rebuttable presumption of flight risk under 18 U.S.C. § 3142(e). But critically, given that this prosecution poses a substantially more severe penalty than what the Defendant faced in the parallel state prosecution, there is a preponderance of the evidence that the defendant is a flight risk. *See e.g., United States v. Parodi*, No. CR-08-0083 PJH, 2008 WL 683421, at *2 (N.D. Cal. Mar. 7, 2008) ("A defendant's financial condition and the length of sentence he or she faces are of particular importance in assessing the risk of flight.").

//

## IV.  CONCLUSION

There is clear and convincing evidence that the defendant is a danger to the community if released. Further, there is a preponderance of the evidence that the defendant is a flight risk. The Court should order the defendant detained pending trial.

If the Court denies the government's motion for detention, the government respectfully requests the imposition of conditions of release including but not limited to: restricted travel; surrender of the Defendant's passport and/or other travel documents; location monitoring; no contact with minors; restricted access with the exception of one computer subject to monitoring; and a court order that the Defendant not change or obtain additional telephone numbers, including the download and use of proxy phone number generating applications such as TextNow.

DATED: May 21, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/
_____
MATTHEW CHANG
Assistant United States Attorney